UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WYNDHAM HOTEL GROUP CANADA, ULC,<br><br>*Plaintiff,*<br><br>v.<br><br>683079 ONTARIO LIMITED, PYONG IL WON, SUN JA WON,<br><br>*Defendants.* | Civil Action No. 17-4000 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on an unopposed motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) by Plaintiff Wyndham Hotel Group Canada, ULC ("WHGC") against Defendants 683079 Ontario Limited, Pyong Il Won ("P. Won"), and Sun Ja Won ("S. Won") (collectively, "Defendants"). D.E. 9. The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**.

## I. FACTS[1] AND PROCEDURAL HISTORY

Parties

Plaintiff Wyndham Hotel Group Canada, ULC ("WHGC") is an unlimited liability company organized and existing under the laws of the Province of Nova Scotia, Canada, and has

---

[1] The facts of this matter derive from the Complaint as well as the affidavits and exhibits submitted in conjunction with Plaintiffs' motion for default judgment. *See Trustees of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. WHGC is a subsidiary of Wyndham Hotel Group Canada Holding Corp., a Delaware corporation with a principal place of business in Parsippany. *Id.* ¶ 2. Super 8 Worldwide, Inc. ("SWI") is an affiliate of WHGC and a South Dakota corporation with a principal place of business in Parsippany. *Id.* ¶ 3. SWI owns and has the exclusive right to license the use of the service mark SUPER 8 and various related trade names, trademarks, service marks, logos, and derivations thereof. *Id.* ¶ 4. SWI also owns and has the exclusive right to license the use of the "distinctive Super 8® System," which provides guest lodging services to the public and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services. *Id.* WHGC is authorized by SWI to grant franchises in Canada to independent, third-party franchisees to own and operate guest lodging facilities using the Super 8® System and Super 8® Marks. *Id.* ¶ 5.

Defendant 683079 Ontario Limited ("Ontario Limited") is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business in London, Ontario. *Id.* ¶ 6. Defendants P. Won and S. Won are a principals of Ontario Limited and citizens of the Province of Ontario. *Id.* ¶¶ 7, 8.

The Franchise Agreement

On December 6, 2010, WHGC entered into a franchise agreement (the "Franchise Agreement") with Ontario Limited for the operation of a 83-room Super 8® guest lodging facility located at 1170 Wellington Road South, London, Ontario – designated as Site No. 11799-84827-04 (the "Facility"). *Id.* ¶ 13; Ex. B. The Franchise Agreement obligated Ontario Unlimited to fulfill a number of requirements. Section 5 of the Franchise Agreement required Ontario Limited to operate a Super 8® guest lodging facility for a twenty-year term. *Id.* ¶ 14. Section 7, Section 18.1, and Schedule C of the Franchise Agreement required Ontario Limited to make certain

2

periodic payments to WHGC for royalties, system assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees"). *Id.* ¶ 15. Section 7.4 of the Franchise Agreement stated that interest is payable "on any past due amount payable to [WHGC] under this Agreement at the rate of 18% per annum accruing from the due date until the amount is paid." *Id.* ¶ 16. Section 3.6 of the Franchise Agreement required Ontario Unlimited to prepare and submit monthly reports to WHGC for the purposes of establishing the amount of royalties and other Recurring Fees due to WHGC. *Id.* ¶ 17. Section 3.6 also required Ontario limited to maintain accurate financial information, including books, records and accounts. *Id.* ¶ 18. Sections 3.6 and 4.8 allowed WHGV to examine, audit, and make copies of the entries in these books, records, and accounts. *Id.*

Termination of Franchise Agreement

Section 11.2 of the Franchise Agreement allowed WHGC to terminate the Franchise Agreement if Ontario Limited (a) discontinued operating the Facility as a Super 8® guest lodging establishment, or (b) lost possession or the right to possession of the Facility. *Id.* ¶ 19. Section 12.1 stated that in the event of a termination, Ontario Limited would pay liquidated damages to WHGC in accordance with a formula included in the Franchise Agreement. *Id.* ¶ 20. The liquidated damages are $2,000.00 for each authorized guest room at the Facility. *Id.* ¶ 21. Section 17.5 states that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement." *Id.* ¶ 22.

P. Won and S. Won provided WHGC with a Guaranty of Ontario Limited's obligations under the Franchise Agreement. *Id.* ¶ 23; Ex. C. Pursuant to the terms of the Guaranty, P. Won and S. Won agreed that upon a default under the Franchise Agreement, they would "immediately

3

unconditionally make each payment and perform or cause [Ontario Limited] to perform, each unpaid or unperformed obligation of [Ontario Limited] under the [Franchise] Agreement." *Id.* ¶ 24. The Guaranty also obligated P. Won and S. Won to pay costs, including reasonable attorneys' fees, incurred by WHGC in enforcing its rights or remedies under the Guaranty or the Franchise Agreement. *Id.* ¶ 25.

On January 21, 2017, Ontario Limited ceased operating the Facility as a Super 8® guest lodging facility. *Id.* ¶ 26. By letter dated February 7, 2017, WHGC informed Ontario Limited's of its unilateral termination of the Franchise Agreement, effective January 21, 2017, and advised Ontario Limited that it was required to pay WHGC $166,000.00 in liquidated damages for the premature termination, as well as all outstanding Recurring Fees through the date of the termination. *Id.* ¶ 27.

Procedural History

Plaintiff filed a Complaint on June 5, 2017, seeking an accounting, liquidated damages, actual damages, and the Recurring Fees due along with interest, fees, and costs. D.E. 1. On September 29, 2017, Plaintiff requested an entry of default. D.E. 7. The Clerk of the Court entered default on the same day. On November 2, 2017, Plaintiff filed the current motion for default judgment against Defendants. D.E. 9. On April 17, 2018, the Court issued an order requesting that Plaintiff submit proof of service pursuant to Federal Rule of Civil Procedure 4(f). D.E. 12. Plaintiff filed supplemental information in response to the Court's request on April 27, 2018. D.E. 13, 14.

## LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

### B. Plaintiff Fails to Show Proper Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)).

Defendant Ontario Limited is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business in London, Ontario. Compl. ¶ 6. P. Won and S. Won are also residents of Ontario, with an address in London, Ontario. *Id.* ¶ 7.

Plaintiff forwarded the Summons and Complaint to Recon Management Group ("Recon") to effect service on Defendants. D.E. 6 ("Couch Cert.") at ¶ 3. Recon identified viable addresses for Defendants and sent them a copy of the Summonses and Complaint via International Registered Mail. Couch Cert. ¶ 4.

Plaintiff provided no proof of service and only minimal analysis of Fed. R. Civ. P. 4 in its initial filings. *See* D.E. 9. On April 17, 2018, the Court issued a text order requiring Plaintiff to "submit proof that service was sufficient pursuant to Rule 4(f) of the Federal Rules of Civil Procedure." D.E. 12. On April 27, 2018, Plaintiff submitted a two-page letter, along with postal mail receipts. D.E. 13, 14. The postal receipts for S. Won and P. Won show receipt signatures (although the Court notes that the signatures look the same). *See* D.E. 14, Ex. A. Plaintiff's package to Ontario Limited was returned to Plaintiff as undeliverable, without any signature. *Id.* at Ex. B.

The Court finds that Plaintiff fails to establish that service was proper under Rule 4. Rules 4(f) and 4(h) provide the respective requirements for service of individuals and corporations in foreign countries.

Rule 4(f) provides as follows:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > (C) unless prohibited by the foreign country's law, by:
> > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> > (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

The relevant portion of Rule 4(h) provides:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
> ...
> > (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h).

Plaintiff argues that it served Defendants pursuant to Rule 4(f)(1) because "[p]ursuant to Article 10(a) of the Hague Convention, a U.S. attorney may, provided that Canada does not object to such methods, serve judicial documents by postal channels directly to persons in Canada." D.E. 14 at 1-2. Plaintiffs contend that because "Canada does not object to service by postal channels. .

. . a party may be served with judicial documents [pursuant to Rule 4(f)(1)] through international mail for cases venued in the United States District Court of New Jersey." *Id.* at 2.

Because Plaintiff focuses on Rule 4(f)(1), the Court begins with the text of Hague Convention and its interaction with Rule 4(f)(1). The United States and Canada are both signatories to the Hague Convention. *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 655 (D.N.J. 2002). The English text of Section 10 reads as follows:

> Provided the State of destination does not object, the present Convention shall not interfere with—
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (quoting 20 U.S.T. at 363). In *Water Splash*, the Supreme Court clarified that the Hague Convention does not, in and of itself, *authorize* service. *Id.* at 1513. Instead, the Convention merely *permits* service. The *Water Splash* Court further clarified the meaning of Article 10(a) as follows:

> Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents through postal channels. *In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.*

*Id.* (emphasis added).

8

Pursuant to *Water Splash*, Plaintiff must show that (1) Canada does not object to service by mail, and that (2) service by mail is authorized under "otherwise-applicable law." *Id.* at 1513. Regarding step one, "Canada does not object to service by postal channels." *See EOI Corp. v. Med. Mktg. Ltd.*, 172 F.R.D. 133, 138 (D.N.J. 1997) (citing Hague Convention, Ancillary Laws and Directives, reprinted in U.S.C.S. on International Agreements at 282); *see also In Re LLS America, LLC*, 2017 WL 3013260, at *2 (E.D. Wash. 2017) ("Plaintiff provided the Court with a copy of Canada's Accession Document to the Hague Convention, which states that 'Canada does not object to service by postal channels.'").[2]

Turning to step two, the Court must look to the "otherwise-applicable law" of the forum in this case: the Federal Rules of Civil Procedure. *In Re LLS America, LLC*, 2017 WL 3013260, at *2 (explaining that "[a]ny affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, *must come from the law of the forum in which the suit is filed*" (emphasis added)); *Moore v. Toyota Motor Corp.*, No. 17-1379, 2017 WL 5257050, at *2 (E.D. La. Nov. 13, 2017) (holding that because a plaintiff attempted to serve the foreign defendant after the case was removed to federal court, the "[p]laintiff is therefore required comply with federal rules regarding service of process." (citing 28 U.S.C. § 1448; Fed. R. Civ. P. 81(c)(1))); *see also Water Splash*, 137 S. Ct. at 1513 ("Because the Court of Appeals concluded that the Convention prohibited service by mail outright, it had no occasion to consider whether Texas law[,the law of the forum,] authorizes the methods of service used by Water Splash."). Therefore, the Court must examine whether Defendants were properly served under Rule 4. This is where Plaintiff hits a roadblock.

---

[2] The Court accepts the analysis of our sister courts. However, the Court notes that Plaintiffs provided nothing beyond a short quote from the *EOI Corp.* decision by way of support.

9

Plaintiff has not shown that it complied with any part of Rule 4(f). Plaintiff did not comply with Rule 4(f)(1), as discussed above, because the Hague Convention does not affirmatively authorize service by mail. *See LT Game Int'l Ltd. v. DEQ Sys. Corp.*, No. 2:13-4593, 2013 WL 5536195, at *2 (D.N.J. Oct. 7, 2013). Plaintiff did not comply with Rule 4(f)(2)(B) because Plaintiffs did not send a letter rogatory or letter of request. *See id.* Plaintiff did not comply with Rule 4(f)(2)(C)(i) because Plaintiff did not personally serve Defendants. *See id.* Plaintiff did not comply with Rule 4(f)(2)(C)(ii) because the Clerk of the Court did not mail the Complaint to the Defendants. *See id.* Plaintiff also did not comply with Rule 4(f)(3) because there was no court order in this case.[3]

Lastly, the Court finds that Plaintiff has not provided sufficient information for the Court to determine that Defendants were served in compliance with Rule 4(f)(2)(A). Rule 4(f)(2)(A) provides that service is proper "if there is no internationally agreed means of service, or if an international agreement allows by does not specify other means, by a method that is reasonably calculated to give notice . . . *as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.*" *Id.* (emphasis added). In *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004), the Ninth Circuit held that Rule 4(f)(2)(A) authorizes personal

---

[3] In *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171 (3d Cir. 2017), the Third Circuit suggested that under Rule 4(f)(3), service to a defendant living in England was proper when done by mail to his last known address. However, in *Marks*, the plaintiff first attempted to serve the defendant "by having the clerk serve the summons and complaint via registered mail to his last known London address under Rule 4(f)(2)(C)(ii)." *Id.* at 176. When that was unsuccessful, "[t]he District Court then *ordered* "alternative" service by again requiring regular mail service to the [defendant's] London address, as well as to the Defendant['s] email[] and by certified mail upon [his] California Counsel." *Id.* (emphasis added). Rule 4(f)(3) provides that service on a foreign party may be made "by other means not prohibited by international agreement, *as the court orders.*" (emphasis added). Here, Rule 4(f)(3) does not apply because this Court did not issue an order.

service, but does "not authorize service by international mail," *id.* at 806. The *Brockmeyer* court reasoned that because "the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service," and because "the explicit mention of international registered mail in Rule 4(f)(2)(C)(ii) . . . and the absence of any such mention in Rule 4(f)(2)(A)," Rule 4(f)(2)(A) does not authorize service by international mail. *Id.* at 806.

Courts have debated the merits of this decision,[4] but certain courts examining service under Rule 4(f)(2)(A), including one court in this District, acknowledge the *Brockmeyer* holding but nevertheless proceeded in their analysis assuming *arguendo* that Rule 4(f)(2)(A) authorizes service by mail if the internal laws of the country of destination authorize service by mail. *Miramontes v. Mills*, No. 11-08603, 2014 WL 12738922, at *4 (C.D. Cal. June 25, 2014); *Silva v. Gonzales*, No. 13-1587, 2014 WL 12663140, at *4 (S.D. Cal. May 23, 2014), *aff'd*, 667 F. App'x 967 (9th Cir. 2016); *LT Game Int'l Ltd. v. DEQ Sys. Corp.*, No. 13-4593, 2013 WL 5536195, at *2 (D.N.J. Oct. 7, 2013); *Emine Tech. Co. v. Aten Int'l Co.*, No. 08-3122, 2008 WL 5000526, at *4 (N.D. Cal. Nov. 21, 2008); *see also The Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2010 WL 2788203, at *9 (E.D. Pa. July 13, 2010); *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 456 (M.D. Pa. 2007).

Thus, assuming that the Third Circuit would not follow *Brockmeyer*, the Court looks to Canada's laws of service. The Court concludes that even if Rule 4(f)(2)(A) may permit service by international mail, Plaintiff fails to show that service was valid. Plaintiffs only argument is that "Canada *does not object to service* by postal channels," and only cites to one case: *EOI Corp. v.*

---

[4] Some courts have even rejected the *Brockmeyer* court's reasoning. *See In re Coudert Bros. LLP*, No. 16-8237, 2017 WL 1944162, at *10 (S.D.N.Y. May 10, 2017) ("The Court is not persuaded by the Ninth Circuit's reasoning in these circumstances [regarding Rule 4(f)(2)(A)].").

*Med. Mktg. Ltd.*, 172 F.R.D. 133 (D.N.J. 1997). D.E. 14 at 2 (emphasis added). However, the *EOI Corp.* court was looking to documents related to the Hague Convention – not Canadian law. Plaintiff must provide analysis of methods of proper service for Canadian courts of general jurisdiction. *See Julien v. Williams*, No. 10-2358-T, 2010 WL 5174535, at *3 (M.D. Fla. Dec. 15, 2010) (holding that because "neither party has directed this Court to any British law regarding the propriety of service by mail. . . . this Court cannot find that [the defendant] was properly served under Rule 4(f)(2)(A).").

Second, even assuming that the *EOI Corp.* court was referring to service under domestic Canadian law (although it was not), Plaintiff's selected quotation from a case without analysis does not convince the Court that service was proper. Plaintiff only claims that "Canada does not object to service by postal channels," D.E. 14 at 2, but does not provide any showing that Canadian law *expressly authorizes service* by mail – a required element. *See Tatung Co., Ltd v. Hsu*, No. 13-01743, 2014 WL 11514476, at *2 (C.D. Cal. Mar. 10, 2014) (finding that "under 4(f)(2)(A), service must be expressly permitted by foreign laws"). The Court has not been provided any case law or analysis that establishes that Canadian law expressly provides for service by mail in its own courts of general jurisdiction. As such, Plaintiff has not carried its burden in showing proper service.

Plaintiff has already been given two opportunities to explain why service was proper - in its original motion (D.E. 9) and in its supplemental filings (D.E. 13, 14). It has not done so. Therefore, Plaintiff's motion for default judgment will be denied without prejudice, with leave to re-serve Defendants.[5]

---

[5] The Court also notes that Plaintiff contends that "[unclaimed] mail constitutes proper service on defendant 683079 Ontario Limited pursuant to Fed. R. Civ. P. 4(h)(2). . . . Even if the unclaimed mail did not constitute proper service, the aforementioned service upon defendants Pyong Il Won

## II. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment (D.E. 9) is **DENIED** without prejudice. Plaintiff shall be granted leave to re-serve Defendants within ninety (90) days pursuant to the Federal Rules of Civil Procedure. If Plaintiff does not properly re-serve Defendants within ninety (90) days, the denial of Plaintiff's motion for default judgment will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 2, 2018

*John Michael Vazquez, U.S.D.J.*

---

and Sun Ja Won, also constitutes proper service on 683079 Ontario Limited because they are the sole principals of 683079 Ontario Limited. Therefore, service of the Summons and Complaint has been reasonably calculated to give notice to defendants." D.E. 14 at 2. However, Rule 4(l)(2)(B) provides that when serving a foreign defendant under Rule 4(f)(2), proof of service consists of "a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Plaintiff provides no analysis on how service of Defendants P. Won and S. Won is sufficient for service on Defendant Ontario Limited other than an unsupported statement that they are the sole principals of Ontario Limited.